We will now hear argument in the case of Gonzalez v. Barr. Good morning. Good morning, Your Honors. May it please the Court. Matthew Seaman on behalf of the Federal Defendant's Appellants in this matter. This appeal is about statutory interpretation. Nothing in the text of the detention statute at issue here, 8 U.S.C. section 1231A.6, requires bond hearings after six months of immigration detention in which the government must prove by clear and convincing evidence that the alien's continued detention is necessary. Well, that is true. But DOF II, I'll call it, did speak to that. And the Supreme Court in Jennings did not say, by the way, anything related to any of the statutes other than the ones it covered is void. We have our own case law. We have Miller v. Gammy. It says that whatever the Supreme Court says or an en banc court, it has to be directly conflicting, irreconcilable. I'm struggling with how DOF II and the requirement for one bond hearing after six months if there's no prospect of imminent release violates Jennings in the sense that Miller v. Gammy would be brought into play. Can you help me with that? Certainly, Your Honor. And our position is that, yes, Jennings does meet that standard and is clearly reconcilable with DOF. And I think there's three different ways to look at it, the first being that what the Supreme Court said in Jennings was that the way that the Ninth Circuit had been applying the canon of constitutional avoidance in all of these cases, DOF, the Rodriguez cases, was wrong because they weren't using it as a statutory interpretation. I don't read it that way, but with respect, it seemed to me what they said was you've got these specific statutes, not 1231A6, but others that were referred to, where we had applied Zadavidas and DOF and had come up with other things. And they said these statutes don't talk at all about bond hearings. How can you read that into it? With respect to those, the Supreme Court was absolutely clear. But I'm struggling with how you get the idea that maybe there's tension, but how can it be totally irreconcilable with DOF too? Meaning Jennings, how can that be irreconcilable? Your Honor, looking at what the Supreme Court has said in Jennings about Section 1226A is instructive on this point because Section 1226A, one of the three detention statutes at issue in Jennings, is very analogous to the statute we're dealing with here, Section 1231A6. And it's analogous in the sense that in both statutes, the detention language is discretionary. It's may detain in 1231A6, and in 1226A, it's may continue to detain or may release. It's analogous, but on this very interpretive point, how to read may, Jennings went out of its way to say that it's different, right? I mean, that was a key part of the reasoning in Jennings, was that 1231 differs materially from the one at issue there, which was 1226. Well, I think what the court actually in Jennings was referring to was the other two detention statutes because the other two detention statutes, 1226C and 1225, what the court said in Jennings was that there is no ambiguity at all, so you don't even get to that step of applying the canon of constitutional avoidance, because that's the first step. What the Supreme Court said about 1226A in Jennings, however, was that, you know, correct, Ninth Circuit's correct that may detain is ambiguous, so you can apply the canon. The problem that the Ninth Circuit had in Rodriguez was that it wasn't actually interpreting the statute. Even if you have that ambiguity, the canon of constitutional avoidance is still just an interpretive tool. And what the Supreme Court said was taking the words may continue to detain or may release and somehow construing that as requiring bond hearings is just not a plausible interpretation of the statute. But Rodriguez is another matter, is it not? We're not really talking about Rodriguez here. We're talking about 1231A6. That's different, is it not?  This is particularly where what we're talking about here is not just the literal application, but how to apply it. Well, but then you run into our Miller v. Gammie issue. I confess that one can read some tension into it, but the Supreme Court, in connection with the specific statutes that are referred to, they're just no question. They're just gone. But that's not what I find with respect to 1231A6. It's not mentioned. It wasn't before them. They didn't talk about its effect with Dioff. It didn't talk about Zobvitz as applied to that statute. So, again, we're just a three-judge panel. We can't overrule Dioff II. We can't overrule others of our cases that help us construe the statute or the canon of constitutional avoidance unless it is utterly irreconcilable. And I don't see that in Jennings vis-a-vis the statute we're dealing with here. Help me with that. Certainly, Your Honor. I think Miller v. Gammie is actually an excellent example because clearly the idea in Miller v. Gammie is that you are going to have situations where intervening Supreme Court or higher court precedent is going to undermine existing circuit precedent, but do so without clearly overruling or abrogating the prior holdings. Clearly, that's what the clearly irreconcilable standard is all about. And if you look at Miller v. Gammie, I think that's actually a very good example of what we have here where Miller v. Gammie dealt with the analysis around immunity from prosecution for certain social workers, state employee social workers, and the intervening Supreme Court precedents in those cases did not deal with social workers, did not deal with the specific state agencies. They actually just dealt with immunity for court reporters and for prosecutors, I believe. So they were like this in that the literal holdings from those Supreme Court cases did not undermine the statutes or the exact issues that were part of the Ninth Circuit precedent. But what Miller said was that doesn't matter. The problem that you have is courts are bound by not just the literal holdings of higher courts, but also their mode of analysis, their analytical reasoning. I agree with all that, but it's got to be when you apply it to the case that we simply cannot continue to apply the law as we have previously applied it when you apply that analysis. And I don't find that, frankly, with Draw 3186. I really don't. Why am I wrong? Respectfully, Your Honor, you're wrong because, as I was saying, the Supreme Court already addressed this question in Jennings, and they addressed the question of is it a plausible interpretation of an immigration detention statute that says may detain? Is it plausible to interpret that through the canon as requiring periodic bond hearings? They were referring to these other statute sections. They didn't even refer to it for 3186, did they? That is correct. But as I was saying, Miller-Vigamy doesn't require it to be the exact same statute or the exact same issue. It's the analytical reasoning. If it's clear that they were covering across the board, I know that's the government's position, but I'm finding difficulty of seeing how, when you have Jennings, we can't apply 1231A6 and DOF II, among others. So I think there's two other different ways to look at this. One of them is if you look at the history of the Ninth Circuit precedent in applying the canon of constitutional avoidance to the immigration detention statutes. The first one being CASAS-Castrillon, which applied it to 1226A, the statute I was just talking about. DOF, by its own terms, extended that holding to the 1231A6 context, finding that there was no reasonable way to differentiate between the two, so they have to extend it. And then the series of Rodriguez cases extended that still further, the CASAS holding and the DOF holding, to apply to those other two detention statutes and reiterating CASAS' holding, the 1226A. But in those others, there was no discussion of a bond hearing, right? I'm sorry, Your Honor, in which others? The ones that the Supreme Court referred to, 12, we've got a list of them here, 12. Hold on a second. Give me a second here. Or go ahead and I'll find them. So I think if you're referring to the other three immigration detention statutes, 1225 and 1236. That's what I'm talking about, yeah. But that is equally true here, Your Honor. Section 1231A6 says nothing about bond hearings. The word bond doesn't appear in the statute. The word hearing doesn't appear in the statute. The word six months doesn't appear in the statute. So that is why our position is that this is directly comparable to what the Supreme Court addressed in Jennings with respect to 1226A, where they said, yes, it's ambiguous. Discretionary may-detain language is ambiguous, but you still have to interpret the statute. It's still a statutory interpretation tool. You don't get to just spot a constitutional issue and rewrite the statute as the court would prefer, which the Jennings court says is what the Ninth Circuit did in the Rodriguez cases. I mean, the concern, and I think this is the same concern Judge Smith is articulating, is there is no shortage of cases in which the Supreme Court has told us that we're doing statutory interpretation wrong. But that doesn't mean that we, as a three-judge panel, then get to go out and disregard every statutory holding from the circuit on the ground that, well, now here's a Supreme Court case that tells us we should do statutory interpretation right. And so I guess I'm struggling with the same question of how does the argument you're making not amount to an invitation to panels to do that? I see your point, Your Honor, and I understand that is a valid concern. The difference here is that, as I said, we have a clear word from the Supreme Court that's much more recent than the Ninth Circuit precedent issue here at Duke. It's much more recent. And as I said, it's not just talking about statutory interpretation. It's talking very specifically about statutory interpretation in the context of applying the candidate of constitutional avoidance to immigration detention statutes that have discretionary made detained language. So, I mean, this is a much clearer conflict than, oh, you know, the Supreme Court clarifying that statutory interpretation should be done somewhat differently. This is a clear conflict between two different ways of doing it with, I would argue, equivalent statutory language. And there's just no way to circle that square, so to speak. There is no way to argue that the Supreme Court, even though the Supreme Court said 1226A cannot be plausibly interpreted to require bond hearings, that somehow that same language in 1231A6 can be plausibly interpreted to require it. And I would note that, if anything, Section 1226A is more amenable to that interpretation because Section 1226A at least mentions the word bond. It at least says that aliens can be released on bond. We don't even have that in the text of 1231A6. So I think it's strange credulity to argue that somehow Doof's interpretation is still a plausible interpretation of the statute, despite what Jennings said about the Rodriguez interpretation of 1226A. And if the Court has no further questions on the Jennings issue, I would like to briefly touch on the Clark and Zadvydas issue, because I know Your Honor mentioned Zadvydas. And the government's position is that Jennings is clearly irreconcilable with Doof. But even if we set that issue aside, if you look at Zadvydas versus Doof, and I understand the other side's argument is that, well, the Doof is just, that's really just the Ninth Circuit applying Zadvydas, and these are two complementary standards that kind of subsume each other. The problem with that argument is twofold. The first being that the Supreme Court already addressed the question in Clark of whether, once the canon of constitutional avoidance is applied, whether it can be reapplied and have the statute interpreted in a different way because of perhaps some slightly different constitutional concerns. And the Supreme Court's answer to that was emphatic, and the answer is no. And that's because, as Jennings reiterated, the canon of constitutional avoidance is a statutory interpretation tool. So if the statute doesn't differentiate between different individuals, which is the case in 1231A6, we have a lot of different categories of individuals who are detained under 1231A6, but the statute doesn't differentiate between them. It just says the government may detain all individuals who fall under this statute. And if the statute doesn't differentiate, then you can't, using the canon of constitutional avoidance, interpret the statute to differentiate between those different individuals. I mean, Counselor, I think that argument based on Clark has a fair amount of force, but unless we agree with you on Jennings, I don't see how we can get to it because, you know, we had Clark before us when we decided Doof. So, I mean, doesn't this all come back to, you know, we have to be able to say that Jennings is clearly reconcilable with Doof in order to rule for you on any of these arguments? That's correct, Your Honor. I would add that the Zavidas and Clark contradiction with Doof strengthens the conclusion that Jennings is clearly reconcilable because I think it is all part of one broad problem, which is that we have a line of cases from the Supreme Court applying the canon of constitutional avoidance to the immigration detention statutes, Zavidas, Clark, and now Jennings. And we have a line of cases from the Ninth Circuit using the canon of constitutional avoidance and applying it to the immigration detention statutes with Casas-Castrillon, Doof, and then the Rodriguez cases. And they are handling the canon in completely different ways and are coming up with completely different results. And I would note that between the two, the Supreme Court's version has to win out here, particularly where the Supreme Court's decision in Jennings has directly overruled the Rodriguez decision and has explicitly abrogated Casas-Castrillon's interpretation of 1226A as requiring bond hearings. So really what we have here is we have a clear line of cases from the Supreme Court that are consistent, that apply the canon in the correct way, and then we have Doof, which just does not comport with the other cases. And I would note finally — —Casas-Castrillon's application to the statute before us at this point? And then where did they do that? Not explicitly, Your Honor, and that's why the Miller v. Gammey comes in, because the point of Miller v. Gammey is that they don't have to. Miller v. Gammey, you know, this Court acknowledged that there are going to be times when, even though the higher court didn't explicitly say what they were doing, that nonetheless the analytical approaches are such that — See, that's what I'm a little troubled by the government's argument, because I think you were implying that they had expressly overruled Casas-Castrillon, and they didn't. So I think what you're saying is that the reasoning that applied to these other statutes equally binds us with respect to the statute under review, 1231A-6. That's in the eye of the beholder. But as far as the Casas-Castrillon, that reference to 1236A does not flow from Jennings, does it? Except by your analysis of extension. No, clearly Jennings abrogated the Casas interpretation. Now, it had been incorporated into the Rodriguez decision, so it was expressly overruling the Rodriguez interpretation. The question about Rodriguez, yeah. But Rodriguez merely adopted the Casas-Castrillon application of the canon of constitutional avoidance to 1226A. That is correct, but what I'm saying is Casas-Castrillon's holding with respect to 1226A was clearly directly abrogated by Jennings. I acknowledge that's not the case with 1231A-6, because that statute was not before them. Right, right. And unless the Court has any further questions, I'd like to reserve the balance. Thank you so much. Good morning. Good morning, Your Honors. Michael Kaufman on behalf of the Plaintiff Appellees. Your Honors, at the outset here, I'd like to clarify that I think the dispute between the parties here is actually much narrower than it may appear at first blush. Both parties agree that Section 1231A-6 authorizes release. Both parties agree that the government must have procedures to determine whether to exercise that discretion to release under the statute. And both parties agree that there has to be a determination at six months as to whether detention beyond that point is justified within the statute. The only issues of dispute is who conducts that determination, whether it is a DHS official, the jailing authority, or a neutral decision-maker, an immigration judge, and what standards apply at that six-month determination. The resolution of both of those issues, Your Honors, is controlled by this Court's decision in Juve 2. Now, the government argues that Juve is clearly irreconcilable with the Supreme Court's decision in Jennings v. Rodriguez. But after the Supreme Court issued its decision, a unanimous panel of the Third Circuit Court of Appeals adopted this Court's construction of 1231A-6 from Juve 2. The Third Circuit's decision in Guerrero-Sanchez shows not only that Juve is reconcilable with Jennings v. Rodriguez, it shows it is indeed the best reading of the statute, even were this Court writing on a blank slate. Now, here today, Your Honor, and in their briefing, the government attempts to draw a distinction between the statutory language in Section 1226A and Section 1231A-6, the provision at issue here. Although the government does admit in their briefing that the language in both provisions directly mirrors each other and for their operative language is identical, and they've created that position here today. The only difference they point to in the statute is that Section 1226A mentions the word bond, whereas Section 1231A-6 does not. However, the government's regulations under Section 1231A-6 authorizes release on bond. And in the first Juve decision, the decision authored by Judge Smith, this Court held that Section 1231A-6, in fact, authorizes release on bond. So both statutes, for all significant purposes, are identical in terms of their operative language. If that's the case and the government concedes that Sections 1226A authorizes bond hearings as their regulations provide, then so too can Section 1231A-6. Those are the same language at issue in both statutes. And the Supreme Court in Jennings didn't say to the contrary, did it? No, not at all, Your Honor. And, in fact, the Supreme Court in Jennings did address the language at issue here in Sections 1231A-6. In Jennings, the Court said that there were two provisions in the INA, Sections 1225B and Sections 1226C, that could not be read to authorize bond hearings after six months, but it contrasted it with the language in Sections 1231A-6 in three respects. First, 1231A-6 provides discretionary authority to release. It says, may detain. It doesn't say, shall detain, like those other two statutes. Unlike those other two provisions, Section 1231A-6 does not have an express exception that limits the circumstances in which release is authorized under the statute. And, most importantly, for present purposes, as the Court found in Zadvydas and reaffirmed in Jennings, Section 1231A-6 is ambiguous as to the length of time that it authorizes detention under the statute. And for those three reasons, Your Honors, as the Third Circuit found in Guerrero-Sanchez, the Jennings decision reinforces the central reasoning in Juve 2 that Section 1231A-6 is ambiguous and susceptible to a limiting construction that avoids the serious and profound constitutional concerns, as this Court described them in Juve, posed by prolonged detention without adequate procedures. Well, Counsel, I mean, I suppose that Jennings did reaffirm Zadvydas, but it did so extremely grudgingly, right? I mean, the Court said it was a notably generous application of the canon. So, I mean, I guess the question is, what we have here is something that goes, would you agree that what we have here goes pretty far beyond Zadvydas as an interpretation in terms of reading this whole procedural requirement into not very much statutory language? Is that fair? Well, Your Honor, I would take issue with that in a couple of respects. First, I don't think anyone would have disputed the characterization of Zadvydas as providing a noticeably generous application of constitutional avoidance before Jennings applied. It's in keeping with a long tradition the Supreme Court has had of reading procedural protections into the immigration laws under the canon of constitutional avoidance, and we have cited cases stretching back a century in our brief that do precisely that. Now, Your Honor, as to the question of whether the Supreme Court was casting doubt as to Section 1231 in Zadvydas, I would just like to point to the Court that in Justice Breyer's majority opinion in Zadvydas, he contemplated that there were two different constraints under the statute. And this is towards the end of the opinion. Justice Breyer lays out how district courts sitting in habeas should evaluate claims of unlawful detention under the statute. And Justice Breyer said, first, the Court should look to whether removal is reasonably foreseeable. If it is not, then the Court should order release. But then the Court goes on to say this, and this is, quote, and if removal is reasonably foreseeable, the habeas court should consider the risk of the aliens committing further crimes as a factor potentially justifying confinement within that reasonable removal period. That's at 533 U.S. at 699. So what Justice Breyer is saying is that even when the Zadvydas limitation is satisfied, that when removal is reasonably foreseeable, there's a secondary condition in the statute, namely that the government has to assure that they're locking people up based on some sort of danger to the community. Well, that is precisely what JUIF does. It operationalizes that constraint under the statute that is contemplated expressly in the Zadvydas decision. And, Your Honor, there's nothing unusual about there being two different constraints under a statute, both of which have to be satisfied for the government to exercise its authority under that statute. There's nothing magical about the canon of constitutional avoidance. It's simply another tool that courts have to discern Congress's intent. And just like a court can apply the rule against surplusage to interpret a statute twice, if necessary to avoid reading multiple sets of words out of a statute, so too can a court apply the canon of constitutional avoidance twice when it's addressing two different constitutional problems that it's attempting to avoid through plausible interpretations of the statute. And that's simply what JUIF does here, is use the constitutional avoidance canon to, again, avoid the profound constitutional concerns posed by lengthening detentions under this statute without adequate procedural procession. The other issue I wanted to address, Your Honor, that the government raised here today is whether the court's decision in JUIF is in any way in conflict with Clark v. Martinez. And as Your Honor alluded to, this was an issue that was fully briefed, considered, and rejected in JUIF II. So I don't think it's properly before the court. But I think it's important to emphasize that the government simply misunderstands the holding in Clark v. Martinez. In Clark, the court considered whether its interpretation of 1231a-6 as applied to deportable noncitizens from Zadvias applied equally to inadmissible noncitizens. And Justice Scalia, writing for the majority there, said, because the statute doesn't distinguish between those two groups of noncitizens, the same statutory interpretation that we adopted in Zadvias has to apply equally to deportable noncitizens. You can't have the statute turn into a chameleon depending on the identity of the litigant before that. JUIF is fully consistent with that principle. It adopts a uniform interpretation of the statute that provides that if you are detained for more than six months, you get a bond hearing. You get a bond hearing under Zadvias. Now, in JUIF II, the government advanced the argument that Mr. JUIF himself was entitled to lesser procedural protections because he was not a lawful permanent resident. And this court rejected that argument because it said we could not adjudicate the claims based on his individual immigration status because there's nothing in the statute that depends on the person's immigration status, their rights under the statute. And it cited the Clark v. Martinez. So this court was fully aware of Clark v. Martinez and crafted an interpretation in JUIF II that was consistent with the Supreme Court's holding in that case. Now, we might have a Clark v. Martinez problem if this court in JUIF II had said, we're going to construe the statute to provide bond hearings for people from Senegal, as Mr. JUIF was, but not for people from Mexico, right? That would be a Clark problem because that would be drawing the distinction based on national origin where nothing in the statute supports that interpretation. But again, Your Honors, that's not what JUIF II does. It adopts a uniform interpretation of the statute that applies to everyone equally subject to the statute. Your Honor, the other argument that the government advanced here today is that Jennings v. Rodriguez somehow changes the mode of analysis when it comes to canon of constitutional avoidance. And I would just take issue with that, Your Honor, because nothing in Jennings purports to change how the avoidance canon applies. Indeed, as Your Honor noted, it reaffirmed the canon of constitutional avoidance's application to this very statute in Zadvitas, which makes clear not only that this statute is susceptible to limiting constructions under that statute, but also that in cases where there is statutory silence in a statute where a statute doesn't address an issue, it's permissible for courts to use the avoidance canon to construe that ambiguity to read in protections where necessary to avoid serious constitutional problems. So Your Honor, I would again take issue with any notion that what Jennings was doing was changing the mode of analysis when it comes to applying the canon of constitutional avoidance. It simply looked at two statutes there, 1225B and 1226C, that provide shall detain, and said we can't read statutes that say shall detain to authorize release through bond hearings, and didn't go any further than that. Your Honors, I'd just like to also briefly turn to the question of what standard of proof applies at prolonged detention hearings under JUIF 2. As we've said before in our briefing, we believe both the statute can be construed to require those procedural protections, but this court in Singh established as a constitutional matter that due process requires the government to bear the burden of proof by clearing convincing evidence at prolonged detention hearings under the immigration laws. In Singh, this court held unequivocally that, quote, due process requires a heightened burden of proof when somebody's liberty interests are at stake. And for that proposition, it cited cases like Cooper v. Oklahoma, like Addington v. Texas. Those are all due process cases decided by the Supreme Court. Unless there was any confusion on this point, in Singh, the court went on to conduct prejudice analysis to see whether the due process violation required a new bond hearing. And that kind of prejudice analysis typically only applies to constitutional claims. Now, Your Honor, I think it's interesting if you go back and look at the history of this court's engagement with prolonged detention cases, even before Singh, you will see that this court has consistently looked at the question of burden and standard of proof as questions that are constitutional, not statutory in nature. So if you go way back to 2005, this court decided a case called Tijani, where it ordered a new bond hearing for someone subject to prolonged detention under sections 1226C, where the government had to bear the burden of proof at that hearing. The reasoning in Tijani is sparse, but the only authority it cited for the proposition that the government had to bear the burden of proof was Cooper v. Oklahoma, which is, again, a due process case decided by the Supreme Court. Three years later, in the Prieto case, Prieto-Romero, the litigant there argued that the immigration judge had committed a due process violation by placing the burden on him at his immigration court bond hearing. And there, this court declined to reach this issue, finding that the litigant could not establish, Mr. Prieto-Romero could not establish prejudice for this alleged due process violation. So I think if you look back well over a decade in Tijani through Prieto-Romero and through Singh, this court has consistently looked at these issues of standard and burden of proof as settled by the due process clause. And because the Supreme Court expressly disclaimed that it was deciding any constitutional issues in Jennings v. Rodriguez, that decision cannot disturb this court's holding in Singh that those procedural protections that the government must bear the burden of proof by clear and convincing evidence remain for people eligible for bond hearings under Section 1230A1-A6 as interpreted by this court's decision in Juve. Since the Supreme Court was so focused on 1225B and 1226A in its Jennings analysis, it certainly knew how to set us straight at the Ninth Circuit on those points. What, if anything, are we to read into the fact that they didn't talk about 1230A1-A6 or Juve in this context? Well, Your Honor, I think they did mention the statute, 1230A1-A6. In the sense that they said you can't do that. Yeah. I think this is, again, Your Honor, an instance where because the court contrasted Section 1230A1-A6 with the provisions that it found could not support reading a bond hearing, if anything, the decision only reinforces the reason in Juve. And certainly the fact the court did not cast doubt. Is it a negative pregnant, basically, if we don't condemn it and, in effect, we approve it? Or is that reading too much into it? I'm not sure you even need to go that far, Your Honor. I think what you have to do is look at the analysis that the court applied and whether it is, in fact, clearly irreconcilable, as Your Honor alluded to. And this court has referred to that standard as a high bar. It's not enough that there must be, you know, quote, some tension with the intervening authority or that the intervening authority even cast doubt on this court's published prior decision. Those are not enough for this court to say that the intervening authority is clearly irreconcilable. And I would submit, Your Honors, that the government can't meet that very high burden here given what the Supreme Court said in Jennings v. Rodriguez. Unless the court has any further questions, I'd just like to end by emphasizing that all we're seeking here is for this court to enforce a rule that's been in place in the Ninth Circuit for more than eight years without incident. And the relief that the injunction provides is modest. All it provides is for a bond hearing at which someone can ask to be released if there's no good reason to continue to keep them locked up. The injunction, therefore, prevents against the needless detention of class members and the harm suffered by their family members and communities while they're locked up, as well as preventing against costly detentions that unnecessarily burden the immigration system. And the relief that the injunction provides is profound. Based on reporting that the government has provided under the injunction, approximately two-thirds of our class members who have had bond hearings under the preliminary injunction for whom we know the outcome of their bond hearings have been found by immigration judges not to present a danger of flight risk warranting to their detention and ordered their release on bond. So we would urge this court to reaffirm its holding in Juif and in Sing and ensure that the government continues to provide these critical protections that prevent against the unnecessary, unlawful deprivation of our class members' liberty interests. Thank you. All right. Well, the government has some rebuttal time. I'll bet you disagree with him. Just a little bit, Your Honor, yes. Just briefly a couple of points I'd like to make. First, with respect to the regulations, I realize he mentioned accurately that Section 1226A, the regulations do provide for bond hearings in some circumstances, but that doesn't really have anything to do with what we're talking about here. There is no doubt that when a statute gives an agency discretion, the agency can promulgate regulations to assist them in exercising that discretion. What we're talking about for the canon of constitutional avoidance is statutory interpretation, and what does the statute require, or more accurately, what can it be plausibly read to require? And I would note that Jennings already answered that question with respect to discretionary may-detain language in Jennings when it talked about 1226. And the court is absolutely correct. Jennings reiterated that the canon applies to 1231A6, reiterated that 1231A6 is ambiguous. But it's not ambiguous with respect to bond hearings, and that's the key. Ambiguity in a statute does not give the court license to rewrite a statute as it pleases. To quote Jennings, that is not how the canon of constitutional avoidance works. So when you're applying the canon, the ambiguity, you still have to interpret the statute, so the ambiguity has to be related to however you're interpreting it. And what the Supreme Court said in Jennings was may-detain, may-release, that's not ambiguous on the question of bond hearings, and the government posits that that's equally true of Section 1231A6. There's no ambiguity with respect to the question of bond hearings. The ambiguity, as the court noted in Zadvydas, is that may-detain could either be read literally to mean that there's just no limitation at all, which would raise a serious constitutional concern, or if you read the statute in light of its purpose and in the context of its purpose, and this is a point that Justice Scalia makes in Clark quite clearly, if you read it in context, clearly the purpose of immigration detention is to ensure that people show up for their removal proceedings, to ensure that they show up for removal. It's not criminal. It's not punitive. So that's where the significant likelihood of removal in the reasonably foreseeable future comes from. It wasn't invented out of thin air. It was reading the statute in the context of its purpose. That's not what the court didn't do. I take your point that there is tension as a result of Jennings, but I'm still struggling with Miller v. Gammey. Why didn't the government just say to us, we know that as a three-judge court you really can't solve this problem. Why don't you take this on bond? Isn't that really what you're asking us to do? We don't believe that we need to do that, Your Honor. We do believe that this meets that clearly reconcilable standard. I do acknowledge that it's high. High bar. It is a high bar. But I think if you look at Miller v. Gammey, what the court said met the high bar there is very comparable to what we have here, where it's not a direct statutory conflict. We acknowledge that. It's different statutes, different questions. But it's the same problem you had in Miller v. Gammey where the analysis is wrong. And I would argue it's actually even more directly irreconcilable here where it's in the context of functionally equivalent, as the other side has acknowledged, a functionally equivalent immigration statute. Okay. All right. We thank both of you for your fine arguments. We appreciate it. You're both excellent lawyers, and that makes our job easier. So the case just argued is submitted, and now we go to the last case of the day, which may involve you all again. I don't know, but perhaps not.
judges: Fernandez, M. Smith, Miller